UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LINDA VOPNFORD,

               Plaintiff,

    v.

WELLCARE HEALTH PLANS, et al.,

               Defendants.

CASE NO. C16-1835JLR

ORDER

## I.  INTRODUCTION

This is an employment discrimination action in which Plaintiff Linda Vopnford asserts seven causes of action against "all defendants":  (1) gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; (2) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; (3) unequal pay based on gender in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); (4) discrimination and wrongful termination

in violation of the Washington Law Against Discrimination ("WLAD"), RCW ch. 49.60;
(5) negligent hiring and supervision; (6) intentional infliction of emotional distress; and
(7) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*
(Am. Compl. (Dkt. # 11) ¶¶ 5.1-6.34.)  Before the court is Defendants Comprehensive
Health Management, Inc. ("CHMI"), Tom Potts, Frank Webster, Lydia Ophaug, Ray
McComb, and Kaleista Lagarde's (collectively, "Moving Defendants") motion to strike
certain allegations from and partially dismiss Ms. Vopnford's amended complaint.
(MTD (Dkt. # 20).)  Ms. Vopnford opposes Moving Defendants' motion.  (MTD Resp.
(Dkt. # 29).)

The court has considered the parties' submissions in support of and opposition to
the motion, the relevant portions of the record, and the applicable law.  Considering itself
fully advised,[1] the court GRANTS in part and DENIES in part Moving Defendants'
motion; STRIKES paragraphs 3.2 through 3.31 from the amended complaint;
DISMISSES without prejudice Ms. Vopnford's claims against Mr. Potts, Ms. Ophaug,
Mr. McComb, and Ms. Lagarde for lack of personal jurisdiction; DISMISSES with
prejudice Ms. Vopnford's Title VII, ADEA, EPA, and ADA claims against Mr. Webster;
and DISMISSES with leave to amend Ms. Vopnford's negligent hiring and supervision
claim against Mr. Webster and CHMI, Ms. Vopnford's intentional infliction of emotional
distress claim against Mr. Webster and CHMI, and Ms. Vopnford's ADA claim against
CHMI.  The court also DISMISSES without prejudice Ms. Vopnford's claims against the

---

[1] Neither side requests oral argument, and the court finds oral argument unnecessary to its
disposition of the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

Doe defendants and ORDERS Ms. Vopnford to show cause no later than August 15, 2017, why the court should not dismiss her claims against Defendants Wellcare Health Plans ("Wellcare") and Tom Cahill for failure to serve.

## II.    BACKGROUND

This action arises out of alleged employment discrimination by Moving Defendants, Wellcare, Mr. Cahill, and 150 Doe defendants.  (*See generally* Am. Compl.) Ms. Vopnford, a 65-year-old woman, worked as a supervisor and manager at CHMI.[2] (Am. Compl. ¶ 2.1.)

### A.    Initial Employment and Promotions

CHMI hired Ms. Vopnford in August 2011 as a temporary employee.[3]  (Am. Compl. ¶ 3.32.)  In July 2012, CHMI hired Ms. Vopnford to the position of Help Desk Operator, a full-time position that initially paid $38,000.00 annually.  (*Id.* ¶¶ 3.33-3.34.) Mr. Cahill, the Bellingham Service Delivery Director, alerted Ms. Vopnford in September 2012 that she would become the new Service Desk Manager.  (*Id.* ¶¶ 3.35, 3.51.)

//

---

[2] Ms. Vopnford alleges that Wellcare, not CHMI, employed her (Am. Compl. ¶ 2.1), but Moving Defendants assert that CHMI was her actual employer during the actions she alleges (MTD at 3 n.2).  Ms. Vopnford does not dispute this contention.  (*See generally* MTD Resp.) Which entity technically employed Ms. Vopnford is irrelevant to the instant motion because Wellcare is not a movant (*see* Dkt.) and CHMI admits that Ms. Vopnford was its employee (MTD at 3 n.2).  Accordingly, the court's bases its background recitation on CHMI's concession that it employed Ms. Vopnford during the relevant time period.

[3] Because the court grants Moving Defendants' motion to strike the pre-2011 allegations in Ms. Vopnford's complaint, *see infra* § III.A., the court omits those allegations from the factual background (*see* Am. Compl. ¶¶ 3.2-3.31).

Ms. Vopnford became the Service Desk Manager but did not receive an increase in pay until March 2013. (*Id.* ¶¶ 3.36, 3.38.) At that time, she received a raise to $42,000.00 per year, and the raise was retroactive to January 1, 2013. (*Id.* ¶¶ 3.40-3.41.) Although the minimum pay for a manager, according to CHMI's salary bands, was $56,000.00 per year, Mr. Cahill explained that CHMI could not afford to give Ms. Vopnford a larger raise at that time due to a limited pool of funds available. (*Id.* ¶¶ 3.39, 3.43.)

In the summer of 2013, the CEO of non-party Windsor Health Group, then CHMI's parent company, announced that the company would pay Ms. Vopnford within the published salary bands within a year. (*Id.* ¶ 3.44.) By the end of 2013, CHMI had increased Ms. Vopnford's annual compensation to $52,000.00, which is $4,000.00 less than the low end of the published salary band for a manager. (*Id.* ¶¶ 3.45-3.46.) Nonetheless, Ms. Vopnford continued to perform her duties and receive "kudos from end users, positive response from staff, and support from [Mr. Cahill]." (*Id.* ¶ 3.47.) Her managers also called upon her to "work on several projects with other Service Delivery staff" during this time. (*Id.* ¶ 3.48.)

**B.    Wellcare's Acquisition of Windsor Health Group**

On January 1, 2014, Wellcare purchased Windsor Health Group. (*Id.* ¶ 3.50.) Shortly thereafter, Wellcare, which is based in Tampa, Florida, initiated meetings with Ms. Vopnford and others regarding systems integration. (*Id.* ¶¶ 3.50-3.51.) In March 2014, Mr. Cahill left CHMI, and Ms. Vopnford began reporting directly to "the

//

Corporate office in Tampa." (*Id.* ¶ 3.51.) Her "new boss"[4] asked Ms. Vopnford "to lead

the process of terminating access for the people who would be leaving on May 21, 2014."

(*Id.* ¶ 3.52.) Ms. Vopnford's new boss also requested that Ms. Vopnford "come to

Tampa to meet with him," and Ms. Vopnford suggested that they include Mr. Webster in

the meeting.[5] (*Id.* ¶ 3.52.)

Ms. Vopnford and Mr. Webster traveled to Tampa and met with members of the

IT staff. (*Id.* ¶ 3.53.) Ms. Vopnford's new boss had not decided where to place Ms.

Vopnford or Mr. Webster, but he directed Ms. Vopnford to "continue what she was

doing" and "work with Tampa staff as needed." (*Id.* ¶ 3.54.) Ms. Vopnford had little

subsequent contact with her new boss, but she and Mr. Webster were scheduled to meet

with him in Nashville, Tennessee in May 2014. (*Id.* ¶¶ 3.55-3.56.)

A few days before the trip to Nashville, Mr. Potts, the head of Ms. Vopnford's

department, informed Ms. Vopnford that "a reorganization would be announced the next

day."[6] (*Id.* ¶ 3.57.) As part of that reorganization, CHMI demoted Ms. Vopnford to

Supervisor and gave her a raise to $54,000.00. (*Id.* ¶¶ 3.58, 3.60.) Despite her title, Ms.

Vopnford no longer had any direct reports, management canceled her trip to Nashville,

//

---

[4] Ms. Vopnford refers to her "new boss" using male pronouns, but the amended complaint does not identify him by name. (*See* Am. Compl. ¶¶ 3.52, 3.54-3.56.) It is therefore unclear whether Ms. Vopnford's new boss is among Moving Defendants or a non-party.

[5] During the events in question, Mr. Webster lived and worked in Washington. (Am. Compl. ¶ 2.5.) He was originally Ms. Vopnford's "subordinate" at CHMI but later became her manager. (*Id.*)

[6] During the events in question, Mr. Potts lived and worked in Florida. (Am. Compl. ¶ 2.4.)

and she suffered a diminishment in responsibilities and a lack of direction. (*Id.* ¶¶ 3.59, 3.61-3.62(b).)[7] Mr. Potts and Mr. Webster, who CHMI promoted to "manager of all remote Client Services staff," assured Ms. Vopnford that she remained part of the leadership team, praised Ms. Vopnford's work, and assured her that they would work on increasing her responsibilities. (*Id.* ¶¶ 3.59, 3.62(a)-3.62(b), 3.64.) Despite her efforts to remain proactive in fulfilling her job duties, however, CHMI began to phase Ms. Vopnford out of communication with management in Tampa.[8] (*Id.* ¶¶ 3.63, 3.65.)

**C.    Termination**

On November 21, 2014, CHMI eliminated Ms. Vopnford's position and terminated Ms. Vopnford.[9] (*Id.* ¶ 3.66.) CHMI informed Ms. Vopnford that her termination was due to a reduction in force and that CHMI treated her the same as others.

//

---

[7] The amended complaint contains two paragraphs numbered 3.62. (*See* Am. Compl. at 13:3-10.) For clarity, the court refers to those paragraphs as 3.62(a) and 3.62(b).

[8] Without any chronological context, Ms. Vopnford also alleges that at some point, "she asked to be moved so that she could hear people when they came to her desk because she was hearing impaired." (Am. Compl. ¶ 6.31.) She alleges that Moving Defendants violated her rights by failing to accommodate this request, paying her unequally, and terminating her because of her disability. (*Id.* ¶¶ 6.31-32.)

[9] Ms. Vopnford's amended complaint includes sparse allegations regarding the specific actions taken by Ms. Ophaug, Mr. McComb, and Ms. Lagarde. Ms. Ophaug, the "head of [Ms. Vopnford]'s department," "made decisions about the status of Washington-based employees and managers" and was "closely involved" in the compensation and termination decisions. (Am. Compl. ¶ 2.6.) Mr. McComb, the Director of Employee Relations and Services, also "made decisions about the status of Washington-based employees and managers" and was "closely involved" in the compensation and termination decisions. (*Id.* ¶ 2.7.) Ms. Lagarde, CHMI's Human Resources Business Partner, "assisted in the decision to demote [Ms. Vopnford] to supervisor." (*Id.* ¶¶ 2.9, 3.37.) During the events in question, Ms. Ophaug and Mr. McComb lived and worked in Florida, and Ms. Lagarde lived and worked in Tennessee. (*Id.* ¶¶ 2.6-2.7, 2.9.)

(*Id.* ¶¶ 3.67, 3.69.)  However, other employees received notice of termination as early as March 2014, which allowed them to make preparations that Ms. Vopnford could not make.  (*Id.* ¶¶ 3.68, 3.70.)  Ms. Vopnford also did not receive prompt payment of benefits upon her termination, and she had to threaten legal action in order to receive the money owed.  (*Id.* ¶¶ 3.73-3.74.)  Since her termination, Ms. Vopnford has struggled to find consistent, full-time work, and her current job pays approximately $30,000.00 per year.  (*Id.* ¶¶ 3.76-3.88.)

Three weeks after her termination, CHMI advertised her previous job—Client Services Supervisor—on its website.  (*Id.* ¶ 3.71.)  CHMI eventually filled the position with a "younger male with less experience and qualifications" than Ms. Vopnford, who was also "paid less" than Ms. Vopnford.  (*Id.* ¶ 3.75.)  Ms. Vopnford subsequently filed a charge with the Equal Employment Opportunity Commission (Alexander Decl. (Dkt. # 30) ¶ 3, Ex. A), and obtained a right-to-sue letter (Milianti Decl. (Dkt. # 21) ¶ 3, Ex. A).[10]  This lawsuit followed.

### III.    ANALYSIS

Moving Defendants first ask the court to strike paragraphs 3.2 through 3.31 from Ms. Vopnford's amended complaint.  (MTD at 17-20.)  They also contend that the court

---

[10] Without stating a legal basis, Ms. Vopnford objects to the court taking judicial notice of documents related to her EEOC charge.  (MTD Resp. at 10.)  In evaluating a motion to dismiss, the court can take judicial notice of matters of public record that are not subject to reasonable dispute.  *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).  An EEOC charge is a matter of public record, *see U.S. E.E.O.C. v. Global Horizons, Inc.*, 860 F. Supp. 2d 1172, 1193 n.5 (D. Haw. 2012), and Ms. Vopnford does not reasonably dispute the documents' accuracy (*see* MTD Resp. at 10)—indeed, she provided two of the documents (Alexander Decl. ¶¶ 3-4, Exs. A-B).  Accordingly, the court takes judicial notice of the documents related to Ms. Vopnford's EEOC charge.

lacks personal jurisdiction over Mr. Potts, Mr. Webster, Ms. Ophaug, Mr. McComb, and Ms. Lagarde (collectively, "Individual Moving Defendants"). (*Id.* at 7-9.) In the alternative, Moving Defendants challenge the legal basis and sufficiency of the allegations as to all seven of Ms. Vopnford's causes of action against Individual Moving Defendants. (*Id.* at 9-17.) As to CHMI, however, Moving Defendants move to dismiss only Ms. Vopnford's claims for negligent hiring and supervision, intentional infliction of emotional distress, and violation of the ADA. (*Id.* at 13-17.) The court now turns to Moving Defendants' motion.

**A.      Motion to Strike**

Pursuant to Federal Rule of Civil Procedure 12(f)(2), Moving Defendants ask the court to strike paragraphs 3.2 through 3.31 of Ms. Vopnford's amended complaint. (MTD at 17-20.) Those paragraphs chronicle Ms. Vopnford's employment history from 1999 through 2011. (*See* Am. Compl. ¶¶ 3.2-3.31.) Ms. Vopnford opposes the motion and argues that the allegations provide relevant contextual information regarding past practices at CHMI's predecessor companies. (MTD Resp. at 19-21.)

1.      Legal Standard

Federal Rule of Civil Procedure 12(f) permits the court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "A federal court will not exercise its discretion under Rule 12(f) to strike a pleading unless the matters sought to be omitted have no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Ollier v. Sweetwater Union High Sch. Dist.*, 735 F. Supp. 2d 1222, 1223-24 (S.D. Cal. 2010)

(citing *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)). Furthermore, "motions to strike are rarely granted in the absence of a showing of prejudice to the moving party." *Freeman v. Alta Bates Summit Med. Ctr. Campus*, No. C 04-2019 SBA, 2004 WL 2326369, at *2 (N.D. Cal. Oct. 12, 2004) (citing 61 Am. Jur. 2d *Pleading* § 505 (1999)). This demanding standard leads district courts in the Ninth Circuit to disfavor motions to strike, which are "often used as a delaying tactic." *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1032-33 (C.D. Cal. 2002); *see also Cruz v. Sky Chefs, Inc.*, No. C-12-03705 DMR, 2013 WL 1892337, at *6 (N.D. Cal. 2013) (collecting cases); *Hovenkotter v. Safeco Corp.*, No. C09-0218JLR, 2009 WL 6698629, at *8-9 (W.D. Wash. Aug. 3, 2009).

      2.  <u>Paragraphs 3.2 through 3.31 of the Amended Complaint</u>

The challenged allegations pertain to actions at and by non-party Olympic Health Management ("Olympic") from 1999 through 2008. (Am. Compl. ¶¶ 3.2-3.31.) As best the court can discern from the passive voice, vague nouns, and imprecise verbs that typify Ms. Vopnford's allegations, Olympic relates to this litigation in the following manner: from 1999 to 2006, Ms. Vopnford worked at Olympic, but Olympic eliminated her position and let her go in May 2006 (*id.* ¶¶ 3.2, 3.15); in 2008, Olympic "was sold to Munich Re" (*id.* ¶ 3.28); in August 2009, Olympic "was transitioned to"—which appears to mean, "was renamed"—Sterling Life Insurance ("Sterling") (*id.* ¶ 3.29); at an indeterminate subsequent time, Sterling purchased Windsor Health Plans and "the overall name [of the business] changed to Windsor Health Group" (*id.* ¶ 3.30); in August 2011, "the company"—presumably Sterling and/or Windsor Health Group—hired Ms.

Vopnford (*id.* ¶ 3.32); on January 1, 2014, Wellcare purchased Windsor Health Group (*id.* ¶ 3.49); and CHMI is a subsidiary of and does business as Wellcare (*id.* ¶ 2.3). Between 2006 and 2011, Ms. Vopnford alleges no connection between herself and Wellcare, CHMI, or any other defendant in this action or non-party corporate entity identified in the above chronology. (*See* Am. Compl. ¶¶ 3.2-3.31.) Furthermore, Ms. Vopnford does not dispute that the challenged allegations reach well beyond the statute of limitations (*see* MTD at 18-19; MTD Resp. at 19-21), but she argues that the time-barred allegations are "relevant as background information" (MTD Resp. at 21).

The challenged allegations are not only stale, they are also untethered to the defendants in this action. Olympic renamed itself Sterling, which purchased Windsor Health Plans and changed its name to Windsor Health Group, which hired Ms. Vopnford and was subsequently purchased by Wellcare. (*See* Am. Compl. ¶¶ 3.29-3.30, 3.32, 3.49.) Olympic's actions, in some cases more than a decade earlier, do not bear on liability, damages, or any other issue in this case, which concerns actions by Wellcare, its subsidiary, and its agents after hiring Ms. Vopnford in August 2011. (*Id.* ¶ 3.32.) Paragraphs 3.2 through 3.31 therefore "have no possible relationship to the controversy" and "may confuse the issues" in this case. *Ollier*, 735 F. Supp. at 1223; *see also Platte Anchor*, 352 F. Supp. 2d at 1057. Furthermore, if allowed to stand, the eight-year time frame referenced in the challenged allegations could prejudice Moving Defendants by dramatically expanding the scope of relevant discovery. *See Freeman*, 2004 WL 2326369, at *2. Accordingly, the court strikes paragraphs 3.2 through 3.31 from the complaint. *See* Fed. R. Civ. P. 12(f).

**B.      Motion to Dismiss for Lack of Personal Jurisdiction**

Individual Moving Defendants argue that the amended complaint fails to establish personal jurisdiction over them, and they therefore move to dismiss all claims against them.  (MTD at 6-9.)

1.  Legal Standard

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss claims against it for lack of personal jurisdiction.  *See* Fed. R. Civ. P. 12(b)(2).  "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper."  *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011).  However, in the absence of an evidentiary hearing, "the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'"  *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 671-72 (9th Cir. 2012) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015).  Although the plaintiff cannot simply rest on the bare allegations of her complaint, uncontroverted allegations in the complaint must be taken as true, and conflicts between parties over statements in affidavits must be resolved in the plaintiff's favor.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004); *see CollegeSource*, 653 F.3d at 1073; *Ranza*, 793 F.3d at 1068.

The test for personal jurisdiction involves two basic inquiries:  (1) whether the applicable long-arm statute is satisfied and (2) whether the assertion of personal jurisdiction satisfies due process.  *See CollegeSource*, 653 F.3d at 1073.  Where, as here,

no federal long-arm statute applies, the court applies the long-arm statute of the state in which it sits. *Schwarzenegger*, 374 F.3d at 800. "Washington's long-arm statute extends jurisdiction over a defendant to the fullest extent" due process permits. *Wash. Shoe*, 704 F.3d at 672 (citing RCW 4.28.185; *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989)); *see also Failla v. FixtureOne Corp.*, 336 P.3d 1112, 1116 (Wash. 2014) ("[Washington's] long-arm statute [is] designed to be co-extensive with federal due process . . . ."). Thus, the court's jurisdictional analysis collapses into a determination of whether the exercise of personal jurisdiction comports with due process. *Wash. Shoe*, 704 F.3d at 672.

"Due process requires that the defendant 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotations omitted)). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza*, 793 F.3d at 1068. Here, although Ms. Vopnford conflates general and specific jurisdiction (*see* MTD Resp. at 3-7), the court construes her briefing to argue that the court has both general and specific jurisdiction over Individual Moving Defendants. The court analyzes those contentions below.

2. General Jurisdiction

The standard for finding general personal jurisdiction over a defendant is "exacting" because it "permits a defendant to be haled into court in the forum state to

answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801; *see also Ranza*, 793 F.3d at 1069. A court has general personal jurisdiction over a nonresident defendant when the defendant engages in "continuous and systematic general . . . contacts," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), such that the defendant's contacts "approximate physical presence" within the state's borders, *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *see also Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cty.*, --- U.S. ---, 137 S. Ct. 1773, 1780 (2017).

By the time Ms. Vopnford filed this lawsuit, none of Individual Moving Defendants were domiciled in Washington. (Compl. (Dkt. # 1) ¶¶ 2.4-2.7 (alleging Mr. Potts, Mr. Webster, Ms. Ophaug, and Mr. McComb are residents of Florida), 2.9 (alleging Ms. Lagarde is a resident of Tennessee).) Besides an allegation that Mr. Webster used to live in Washington (*id.* ¶ 2.5; *see also* Am. Compl. ¶ 2.5), the only contacts Individual Moving Defendants have with Washington are the incidental contacts stemming from their work for a company with employees across the country (Compl. ¶¶ 3.32-3.75; *see also* Am. Compl. ¶¶ 3.32-3.75). This incidental contact does not "approximate physical presence" in Washington, *Bancroft & Masters*, 223 F.3d at 1086, and therefore it would not comport with "traditional notions of fair play and substantial justice," *Int'l Shoe*, 326 U.S. at 316, to permit Individual Moving Defendants to be sued in Washington for "any of [their] activities anywhere in the world," *Schwarzenegger*, 374

F.3d at 801; *see Goodyear*, 564 U.S. at 924 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ."). The court therefore rejects the argument that Individual Moving Defendants are subject to general jurisdiction in Washington.

### 3. Specific Jurisdiction

"Specific jurisdiction exists when a case "aris[es] out of or relate[s] to the defendant's contacts with the forum."" *Ranza*, 793 F.3d at 1068 (quoting *Helicopteros Nacionales*, 466 U.S. at 414 n.8). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. ---, 134 S. Ct. 1115, 1121 (2014) (internal quotation marks omitted). For a defendant to be subject to the court's specific jurisdiction

> (1) [t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* If the plaintiff succeeds, the burden shifts to the defendant to "present a compelling case" that exercising personal jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

As a threshold matter, the court rejects Moving Defendants' argument that Ms. Vopnford's "Title VII, ADEA, ADA, EPA, [intentional infliction of emotional distress],

and negligent supervision/hiring claims cannot provide a basis for" specific jurisdiction because they "fail as a matter of law." (MTD Reply (Dkt. # 31) at 8.) Although the court concludes that some of those claims are legally untenable, other claims might be salvaged with more thorough factual allegations. *See infra* § III.C.6. Furthermore, "for purposes of the jurisdictional analysis, the inquiry is whether the asserted claims arise out of defendant's forum-related activities." *Ferrigno v. Philips Elecs. N. Am. Corp.*, No. C-09-03085 RMW, 2010 WL 2219975, at *6 (N.D. Cal. June 1, 2010). "The fact that the asserted claims may be legally deficient for other reasons" does not factor in to the inquiry into whether "the asserted claims arise out of the forum-related conduct." *Id.* Moreover, regardless of which claims the court considers, the factual allegations supporting those claims are essentially identical; the only relevant distinction is whether the alleged discrimination and tortious conduct stemmed from Ms. Vopnford's age, gender, or disability. (*See* Am. Compl. ¶¶ 5.1-6.34.) Accordingly, apart from the stricken allegations, *see supra* § III.A.2., the court considers the entirety of the complaint in analyzing whether it has personal jurisdiction over Individual Moving Defendants.

> *a. Mr. Webster*

During the events in question, Mr. Webster was a Washington domiciliary (Am. Compl. ¶ 2.5), whereas Mr. Potts, Ms. Ophaug, Mr. McComb, and Ms. Lagarde were nonresidents (*id.* ¶¶ 2.4, 2.6-2.7, 2.9). The court can reasonably infer from Ms. Vopnford's allegations that Mr. Webster worked in Ms. Vopnford's office (*see id.* ¶¶ 2.5 (alleging that "at the time of this incident," Mr. Webster resided in Washington); *see also id.* ¶¶ 3.51-3.56), and Moving Defendants do not challenge or put forth evidence contrary

to that inference, *see Schwarzenegger*, 374 F.3d at 800 ("[U]ncontroverted allegations in the complaint must be taken as true.").  Although he has since moved to Florida, during the relevant time, Mr. Webster purposely directed his suit-related activities toward Washington and purposely availed himself of the privilege of conducting suit-related activities in Washington.  *See Schwarzenegger*, 374 F.3d at 802; *see also Walden*, 134 S. Ct. at 1122 ("[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.").  Furthermore, besides one trip to Florida (Am. Compl. ¶ 3.53), Mr. Webster's alleged actions that gave rise to this lawsuit took place at CHMI's Bellingham, Washington, office (*see id.* ¶¶ 2.1-2.3, 2.5).  Accordingly, the court concludes that Ms. Vopnford has satisfied the first two prongs of the specific jurisdiction test.  *See Schwarzenegger*, 374 F.3d at 802.  The burden therefore shifts to Mr. Webster to show that the exercise of personal jurisdiction would be unreasonable.  *Burger King*, 471 U.S. at 477; *Schwarzenegger*, 374 F.3d at 802.

Courts consider several factors when determining whether exercising personal jurisdiction would be reasonable:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107, 1112 (9th Cir. 2004).  Moving Defendants make no showing that personal jurisdiction over Mr. Webster would

be unreasonable.  Although they acknowledge that Mr. Webster "formerly resided in

Washington" (MTD at 8), Moving Defendants' arguments regarding personal jurisdiction

ignore that all of Mr. Webster's actions that gave rise to this lawsuit also appear to have

taken place in Washington (*see, e.g.*, MTD Reply at 8-9 (grouping Individual Moving

Defendants and treating them as nonresidents at the time of the acts and omissions that

gave rise to this lawsuit)).  Thus, besides the second factor—the burden on Mr.

Webster—the factors articulated in *CE Distribution* are neutral or favor exercising

personal jurisdiction over Mr. Webster.  380 F.3d at 1112.  Accordingly, the court

concludes exercising personal jurisdiction over Mr. Webster is reasonable and denies his

motion to dismiss for lack of personal jurisdiction.

       *b.  Mr. Potts, Ms. Ophaug, Mr. McComb, and Ms. Lagarde*

      In contrast, Mr. Potts, Ms. Ophaug, Mr. McComb, and Ms. Lagarde worked for

Wellcare and CHMI from Florida and Tennessee.  "Due process requires that a defendant

be haled into court in a forum State based on his own affiliation with the State, not based

on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other

persons affiliated with the State."[11]  *Walden*, 134 S. Ct. at 1123 (quoting *Burger King*,

471 U.S. at 475).  "Regardless of where a plaintiff lives or works, an injury is

jurisdictionally relevant only insofar as it shows that the defendant has formed a contact

with the forum State."  *Id.* at 1122.

//

---

[11] "These same principles apply when intentional torts are involved."  *Walden*, 134 S. Ct.
at 1123; (*see* Am. Compl. ¶¶ 5.24-5.28 (alleging intentional infliction of emotional distress).)

Apart from their sparse interactions with Ms. Vopnford and the related communications with Mr. Webster, there is no allegation or evidence that Mr. Potts, Ms. Ophaug, Mr. McComb, or Ms. Lagarde had contact with Washington. *Cf. id.* ("[A] defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). Although Ms. Vopnford felt the impact in Washington, the alleged discriminatory and tortious conduct occurred in Florida and Tennessee and was not "performed for the very purpose of having [its] consequences felt in" Washington. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1112 (9th Cir. 2002); (*see* Am. Compl. ¶¶ 3.32-3.75); *cf. Calder v. Jones*, 465 U.S. 783, 789 (1984) (finding specific jurisdiction proper where the forum was the "focal point" of the conduct that caused the harm and the harm itself); *see also Walden*, 134 S. Ct. at 1125 ("*Calder* made clear that mere injury to a forum resident is not a sufficient connection to the forum."). In other words, all contact with Washington was random, fortuitous, attenuated, and collateral to out-of-state deliberations, decisions, and interactions. *See Walden*, 134 S. Ct. at 1123; *Burger King*, 471 U.S. at 475; *see also Walden*, 134 S. Ct. at 1126 ("[T]he mere fact that [the defendant's out-of-state conduct] affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.").

//

//

//

The court therefore concludes that Mr. Potts, Ms. Ophaug, Mr. McComb, and Ms. Lagarde lack sufficient case-related contacts to satisfy due process.[12]  Accordingly, the court dismisses Ms. Vopnford's claims against Mr. Potts, Ms. Ophaug, Mr. McComb, and Ms. Lagarde for lack of personal jurisdiction.

**C.    Motion to Dismiss for Failure to State a Claim**

Moving Defendants argue that Counts Five, Six, and Seven are subject to dismissal pursuant to Rule 12(b)(6).  Because the court has dismissed Ms. Vopnford's claims against Individual Moving Defendants, besides Mr. Webster, for lack of personal jurisdiction, *see supra* § III.B., it analyzes the sufficiency of Ms. Vopnford's allegations only as to Mr. Webster and CHMI.

1.  <u>Legal Standard</u>

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.  *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

---

[12] Even if Mr. Potts, Ms. Ophaug, Mr. McComb, and Ms. Lagarde had sufficient contacts to satisfy due process, *Schwarzenegger*, 374 F.3d at 802, exercising personal jurisdiction over them would not be reasonable because all but one of the factors from *CE Distribution*, 380 F.3d at 1112, are either neutral or favor Mr. Potts, Ms. Ophaug, Mr. McComb, and Ms. Lagarde.

550 U.S. 544, 570 (2007)); *see Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court, however, need not accept as true a legal conclusion presented as a factual allegation. *Id.* Finally, dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## 2. Individual Liability Against Mr. Webster

Moving Defendants argue that all of Ms. Vopnford's federal statutory claims fail as a matter of law because Title VII, the ADEA, the EPA, and the ADA do not support claims against individuals. (MTD at 9-11.) Ms. Vopnford concedes this point but contends that "there is significant weight to change these holdings, and many District Courts as well as the Washington Supreme Court have called for that change." (MTD Resp. at 7 (citing *Brown v. Scott Paper Worldwide Co.*, 20 P.3d 921 (Wash. 2001)).) Federal district courts lack the authority to reinterpret federal law in the face of binding precedent.[13] Furthermore, Ms. Vopnford makes no further argument on this point. (*See*

//

//

_____

[13] Although the Ninth Circuit has not specifically addressed the availability of individual supervisor liability under the EPA, Ms. Vopnford suggests "no reason to stretch the liability of individual employees beyond the respondeat superior principle intended by Congress." *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 588 (9th Cir. 1993) (concluding that the bar on individual liability extends to Title VII and the ADEA).

*id.*)  Accordingly, the court concludes that Counts One, Two, Three, and Seven fail as a

matter of law as alleged against Mr. Webster.

### 3.  Count Five:  Negligent Hiring and Supervision

Moving Defendants move to dismiss Ms. Vopnford's negligent hiring and

supervision claims.  They first argue that this count cannot be maintained because it is

duplicative of Ms. Vopnford's WLAD claim.  (MTD at 12-13 ("In effect, courts have no

jurisdiction over . . . negligent hiring/supervision claims where the factual basis for such

claims are the same as those supporting a plaintiff's discrimination claims.").)  However,

the cases Moving Defendants cite in support of this argument address double-recovery,

and they do not support Moving Defendants' preemption-based argument.  *See Haubry v.*

*Snow*, 31 P.3d 1186, 1193 (Wash. Ct. App. 2001) ("An employee may recover damages

for emotional distress in an employment context but only if the factual basis for the claim

is distinct from the factual basis for the discrimination claim."); *Francom v. Costco*

*Wholesale Corp.*, 991 P.2d 1182, 1192 (Wash. Ct. App. 2000) ("Because the law will not

permit a double recovery, a plaintiff will not be permitted to be compensated twice for

the same emotional injuries. . . . However, when a plaintiff alleges that

non-discriminatory conduct caused separate emotional injuries, he or she may maintain a

separate claim for negligent infliction of emotional distress.").  The court can plausibly

infer that Ms. Vopnford incurred distinct damages as a result of Mr. Webster and CHMI's

alleged negligent hiring and supervision from those she incurred as a result of Mr.

Webster and CHMI's alleged discrimination.  (*See* Am. Compl. ¶¶ 4.1-4.6.)

Accordingly, the court denies the motion to dismiss on the basis of duplicative recovery,

without prejudice to renewing that argument based on a factual record. *See Haubry*, 31 P.3d at 1193 (addressing the duplicative recovery argument as raised on summary judgment); *Francom*, 991 P.2d at 1192 (same).

Moving Defendants next argue that Ms. Vopnford has inadequately alleged negligent hiring and supervision. (MTD at 13-15.) The elements of a negligent hiring claim are: (1) "the employer knew or, in the exercise of ordinary care, should have known of the employee's unfitness at the time of hiring"; and (2) "the negligently hired employee proximately caused the plaintiff's injury." *Carlsen v. Wackenhut*, 868 P.2d 882, 886 (Wash. Ct. App. 1994). The elements of a negligent supervision claim are:

> (1) an employee acted outside the scope of his or her employment; (2) the employee presented a risk of harm to other employees; (3) the employer knew, or should have known in the exercise of reasonable care that the employee posed a risk to others; and (4) that the employer's failure to supervise was the proximate cause of injuries to other employees."

*Briggs v. Nova Servs.*, 147 P.3d 616, 622 (Wash. Ct. App. 2006) (citing *Niece v. Elmview Grp. Home*, 929 P.2d 420, 426 (Wash. 1997)).

Ms. Vopnford fails to state a claim for negligent hiring or supervision against CHMI. The amended complaint contains no allegations regarding CHMI's knowledge— actual or constructive—regarding the "unfitness at the time of hiring" of any of the employees that allegedly harmed Ms. Vopnford. *Cf. Carlsen*, 868 P.2d at 886. The allegations are equally insufficient to support a claim against CHMI for negligent supervision. The amended complaint contains no allegations that suggest any CHMI employees acted outside the scope of their employment or that CHMI management knew or should have known that the employees represented a risk of harm to others. *See*

*Briggs*, 147 P.3d at 622.  Indeed, the factual narrative in the amended complaint describes a group of CHMI employees acting fully within the scope of their employment.  (*See* Am. Compl. ¶¶ 3.32-3.75); *cf. Evans v. Tacoma Sch. Dist. No. 10*, 380 P.3d 553, 559 (Wash. Ct. App. 2016) (quoting *Thompson v. Everett Clinic*, 860 P.2d 1054, 1058 (1993)) ("[C]onduct not performed in furtherance of the employer's business is outside the scope of employment. . . . This includes conduct involving the employee's 'wholly personal motive' and 'solely personal objectives or desires.'").  Accordingly, the court concludes that Ms. Vopnford fails to state a claim against CHMI for negligent supervision.

Ms. Vopnford's negligent hiring and supervision claims against Mr. Webster suffer the above-mentioned deficiencies plus one additional flaw:  Ms. Vopnford does not allege that Mr. Webster hired or supervised any of the alleged wrongdoers.  (*See* Am. Compl. ¶¶ 3.32-3.75.)  Thus, even assuming an individual such as Mr. Webster can be held liable for negligent hiring and negligent supervision, *cf. Haubry*, 31 P.3d at 1193-94, Ms. Vopnford's factual allegations fall short of the pleading standard.  The court accordingly dismisses Ms. Vopnford's negligent hiring and supervision cause of action for failure to state a claim.

4.  <u>Count Six:  Intentional Infliction of Emotional Distress</u>

Moving Defendants next argue that Ms. Vopnford inadequately alleged intentional infliction of emotional distress.[14]  (MTD at 15-16.)  The elements of an intentional

---

[14] As a threshold matter, the court rejects Moving Defendants' argument that Ms. Vopnford cannot maintain an intentional infliction of emotional distress claim because it is duplicative of her WLAD claim.  (*See* MTD at 12-13.)  For the reasons identified above, *see supra* § III.C.3., it is plausible that Ms. Vopnford suffered distinct injuries from these alleged

infliction of emotional distress claim[15] are:  "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress."  *Trujillo v. Nw. Tr. Servs., Inc.*, 355 P.3d 1100, 1110 (Wash. 2015) (internal quotation marks omitted).  Washington characterizes extreme and outrageous conduct as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Dicomes v. State*, 782 P.2d 1002, 1012 (Wash. 1989) (emphasis and internal quotation marks omitted).

In support of her intentional infliction of emotional distress claim, Ms. Vopnford argues that Defendants terminated Ms. Vopnford, paid her less, and "may have deliberately toyed with her" by misleading her about her future role with the company. (MTD Resp. at 15-16.)  Even assuming Ms. Vopnford's allegations support the plausible inference that Moving Defendants took these actions,[16] none of them constitute "atrocious" conduct that is "beyond all bounds of decency" and "utterly intolerable in a civilized community."  *Dicomes*, 782 P.2d at 1012 (holding as a matter of law that "the fact of . . . discharge itself," "mere insults and indignities" such as "embarrassment or humiliation," and "bad faith" or "malice" are insufficient to support a claim of outrage).

---

wrongs, and the rule against double recovery therefore does not provide a basis to dismiss the claim, *cf. Haubry*, 31 P.3d at 1193; *Francom*, 991 P.2d at 1192.

[15] In Washington, intentional infliction of emotional distress is also referred to as the tort of outrage.  *See Rice v. Janovich*, 742 P.2d 1230, 1238 (Wash. 1987).

[16] In light of Ms. Vopnford's argument that Defendants "may have" toyed with her (MTD Resp. at 15), the court notes that her allegations must plausibly suggest—not merely be consistent with—a right to relief, *see Twombly*, 550 U.S. at 557.

1   Accordingly, the court concludes that Ms. Vopnfords fails to state a claim for intentional

2   infliction of emotional distress against CHMI or Mr. Webster.

3          5.   Count Seven:  Violation of the ADA

4          Finally, Moving Defendants argue that Ms. Vopnford fails to state an ADA claim.

5   (MTD at 16-17.)  In response, Ms. Vopnford merely recites case law regarding what

6   constitutes a qualified individual under the ADA.  (*See* MTD Resp. at 12-14.)  The issue

7   before the court, however, is whether Ms. Vopnford's allegations give rise to the

8   plausible inference that CHMI[17] is liable for violating the ADA.

9          The ADA prohibits a "covered entity" from discriminating against a "qualified

10  individual on the basis of disability in regard to job application procedures, the hiring,

11  advancement, or discharge of employees, employee compensation, job training, and other

12  terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  A "disability"

13  can take one of three forms:  "a physical or mental impairment that substantially limits

14  one or more major life activities"; "a record of such an impairment"; or "being regarded

15  as having such an impairment." *Id.* § 12102(1); *see also Bragdon v. Abbott*, 524 U.S.

16  624, 631 (1998) (articulating a three-step inquiry to determine whether an ailment

17  constitutes a "physical or mental impairment that substantially limits one or more major

18  life activities"); 42 U.S.C. § 12102(3) (elaborating on what constitutes being "regarded as

19  having such an impairment").

20  //

21          ───────────────────

      [17] Above, the court dismisses Ms. Vopnford's ADA claim against Mr. Webster for lack
22  of individual liability under that statute.  *See supra* § III.C.2.  The court therefore only addresses
      Ms. Vopnford's ADA claim against CHMI.

The amended complaint contains a dearth of factual allegations regarding Ms. Vopnford's alleged disability. The following paragraphs contain the entirety of the pertinent factual allegations:

> 6.31  PLAINTIFF asked to be moved so that she could hear people when they came to her desk because she was hearing impaired. DEFENDANTS did not allow the move. Defendants failed to grant the reasonable accommodation.
>
> 6.32  Pleading in addition, and in the alternative, DEFENDANTS' unequal pay and (except CAHILL) wrongful termination was due to PLAINTIFF'S disability.

(Am. Compl. ¶¶ 6.31-6.32.)  Not all hearing impairments constitute disabilities under the ADA, *see Finical v. Collections Unlimited, Inc.*, 65 F. Supp. 2d 1032, 1035-42 (D. Ariz. 1999), and Ms. Vopnford's allegations do not allow the court to plausibly infer that her hearing impairment rises to the level of a disability, *see* 42 U.S.C. § 12102(1); *see also, e.g.*, *Gebelien v. Lay Out Etc., Inc.*, No. 11-00596 DAE, 2012 WL 12516602, at *3 (citing *Twombly*, 550 U.S. at 570) (concluding that the plaintiff's "vague and generalized reference to a medical illness and back injury are insufficient to establish a plausible ground for relief under the ADA based on disability discrimination").  Further, even assuming Ms. Vopnford's hearing impairment constitutes a disability, she inadequately alleges that CHMI discriminated "on the basis of [her] disability."  42 U.S.C. § 12112(a). Instead, Ms. Vopnford alleges in conclusory fashion that Defendants paid her unequally and wrongfully terminated her "due to" her disability.  (Am. Compl. ¶ 6.32); *see Iqbal*, 556 U.S. at 678-79 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that,

because they are no more than conclusions, are not entitled to the assumption of truth."). No nonconclusory factual allegations tie Ms. Vopnford's hearing impairment to her salary or her wrongful termination, and the court therefore cannot plausibly infer that CHMI discriminated against Ms. Vopnford on the basis of that impairment. The court therefore dismisses Ms. Vopnford's ADA claim against CHMI for failure to state a claim.

6. Leave to Amend

As a general rule, when a court grants a motion to dismiss, the court should dismiss the complaint with leave to amend. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)). The policy favoring amendment is to be applied with "extreme liberality." *Id.* at 1051. In determining whether dismissal without leave to amend is appropriate, courts consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

As Ms. Vopnford acknowledges (MTD Resp. at 7), her federal claims against Mr. Webster are legally deficient because there is no individual liability under Title VII, the ADEA, the EPA, or the ADA, *see supra* § III.C.2. Because of this irreparable legal flaw, leave to amend those claims against Mr. Webster would be futile and the court denies leave to amend.

However, the court grants Ms. Vopnford leave to amend her negligent hiring and supervision claim against Mr. Webster and CHMI, her intentional infliction of emotional

distress claim against Mr. Webster and CHMI, and her ADA claim against CHMI. As the court explains above, the factual allegations supporting those claims are deficient. *See supra* §§ III.C.3-5. However, Ms. Vopnford has only amended her complaint once, and that amendment was not in response to the court's identification of pleading deficiencies. (*See* Dkt.) It is therefore conceivable that further nonconclusory factual allegations would adequately support Ms. Vopnford's claims. Furthermore, although Moving Defendants repeatedly request that the court dismiss Ms. Vopnford's claims "with prejudice" (MTD at 15:9, 16:17, 17:21), they make no showing of undue delay, bad faith, or dilatory motive by Ms. Vopnford, *see Foman*, 371 U.S. at 182. Accordingly, the court concludes that leave to amend is appropriate as to those claims.

If Ms. Vopnford opts to amend her complaint, she must submit the amended complaint no later than August 21, 2017. Unlike the operative complaint, which overuses pronouns and indiscriminately accuses the "Defendants" of taking any number of actions, any second amended complaint must clearly indicate by name which individuals or entities took which actions and which claims Ms. Vopnford asserts against which defendants. Ms. Vopnford must submit with the amended complaint a redlined version of the complaint or a document that otherwise identifies the changed or added factual allegations. *See* Local Rules W.D. Wash. LCR 15. If Ms. Vopnford fails to timely amend her complaint or fails to remedy the pleading deficiencies identified herein, the court may treat that failure as evidence of the futility of further amendment.

//

//

**D.     Non-Moving Defendants**

Ms. Vopnford names 150 Doe defendants.  (Am. Compl. ¶ 2.10.)  The court previously ordered Ms. Vopnford to show cause why it should not dismiss the Doe defendants for failure to serve (OSC (Dkt. # 8)), and Ms. Vopnford indicated that the Doe defendants are "unknown at this time, and therefore not servable" (OSC Resp. (Dkt. # 9) at 2).  Doe pleading is disfavored in federal courts, *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), and a plaintiff suing Doe defendants "must allege the particulars of his or her claim against each one, even though the plaintiff does not know the individual's name at the time of pleading," *Smith v. HSBC Bank of U.S., Nat'l Ass'n*, No. 1:11-cv-00398-LJO-SMS, 2011 WL 1497072, at *4 (E.D. Cal. Apr. 19, 2011).  Ms. Vopnford provides almost no detail regarding the Doe defendants; instead, she uses them as placeholders in case discovery reveals additional managers and supervisors at fault. (*See* Am. Compl. ¶¶ 2.10, 5.18.)  The deadline to join parties passed on June 21, 2017. (Sched. Order (Dkt. # 24) at 1.)  Accordingly, the court DISMISSES the Doe defendants without prejudice and without leave to amend.

The remaining defendants are Wellcare and Mr. Cahill.  Ms. Vopnford appears to have properly effected service of the original complaint on Wellcare (Aff. of Serv. (Dkt. # 6)), and Mr. Cahill waived service of the original complaint (Waiv. of Serv. (Dkt. # 5)).  Where a defendant has previously appeared, an amended complaint that contains no new or additional claims against that defendant may be served under Federal Rule of Civil Procedure 5.  *See* Fed. R. Civ. P. 5(a)(1)(B); 1-5 Moore's Federal Practice—Civil § 5.02 (2017).  Furthermore, "[n]o service is required on a party who is in default for failing to

appear." *See* Fed. R. Civ. P. 5(a)(2).  However, neither Wellcare nor Mr. Cahill appeared in this action, and Ms. Vopnford never sought or obtained a default against Wellcare or Mr. Cahill.  (*See* Dkt.)  It therefore appears that Ms. Vopnford was obligated—and failed—to serve Wellcare and Mr. Cahill with the amended complaint in accordance with Rule 4.[18]

The court therefore orders Ms. Vopnford to show cause why the court should not dismiss Wellcare and Mr. Cahill for failure to serve.  *See* Fed. R. Civ. P. 4(m).  Ms. Vopnford must respond to this order with a brief of no more than three (3) pages no later than August 15, 2017.  Moving Defendants may, but are not required to, respond to this order subject to the same deadline and page limitation.

### IV.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Moving Defendants' motion to strike and partially dismiss (Dkt. # 20); STRIKES paragraphs 3.2 through 3.31 from the amended complaint; DISMISSES without prejudice Ms. Vopnford's claims against Mr. Potts, Ms. Ophaug, Mr. McComb, and Ms. Lagarde for lack of personal jurisdiction; DISMISSES with prejudice Ms. Vopnford's Title VII, ADEA, EPA, and ADA claims against Mr. Webster; and DISMISSES with leave to amend Ms. Vopnford's negligent hiring and supervision claim against Mr. Webster and CHMI, Ms. Vopnford's intentional infliction of emotional distress claim against Mr. Webster and CHMI, and Ms. Vopnford's ADA claim against CHMI.  The court

---

[18] Even assuming Rule 5 applies, it is unclear whether Ms. Vopnford properly effected service of the amended complaint on Wellcare and Mr. Cahill.  *See* Fed. R. Civ. P. 5(b).

DISMISSES without prejudice Ms. Vopnford's claims against the Doe defendants and

ORDERS Ms. Vopnford to show cause no later than August 15, 2017, why the court

should not dismiss her claims against Wellcare and Mr. Cahill for failure to serve.

Dated this 8th day of August, 2017.

JAMES L. ROBART
United States District Judge